CHAMPAIGN COUNTY

*v.*

THOMAS A. REED.

*Filed at Springfield September 30, 1881.*

1. TAXATION—*exemption of lands of Illinois Central Railroad Company.* Lands selected by the Illinois Central Railroad Company, under the act of Congress on that subject, are liable to taxation when sold by the company and paid for, although no conveyance may have been made.

2. SAME—*application to refund.* On an application to the county board for the refunding of taxes erroneously collected or paid, on the ground the land was not subject to taxation, the board may well refuse to have the same refunded, where they have not reasonable grounds to be satisfied that the property is not liable to taxation.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Mr. M. W. MATTHEWS, State's Attorney, and Mr. FRANCIS M. WRIGHT, for the plaintiff in error.

Mr. J. W. SIM, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

At a meeting of the board of supervisors of Champaign county, in September, 1878, Thomas A. Reed applied to have refunded to him certain moneys paid by him at a tax sale of lots in the town of Tolono, Ill., made in 1868 for the taxes of the year 1867, together with the taxes paid on said lots since that time, on the ground that the lots were assessed before they became taxable. The amount paid at the tax sale was $198.74; the subsequent taxes were $203.35, making, in the whole, $402.09. The board disallowed the claim. On appeal to the circuit court, judgment was rendered against the county for the whole amount of the claim. The county brings the case here on error.

The application was made under section 268, Rev. Stat. 1874, p. 902, which provides: "If any real property shall be * * * assessed before it becomes taxable, and the taxes so erroneously assessed shall have been paid, either at sale or otherwise, * * * the county board, on application of the person paying the same, or his agent, and being satisfied of the facts in the case, shall cause the State and county taxes to be refunded, *pro rata*, by the State and county, and the city and incorporated town or village taxes and special assessments by the city or incorporated town, village, or other proper authorities or persons." There was a stipulation in the case that the claim as filed by Reed was correct as respects the lots and amount paid at the tax sale and for subsequent taxes; that the lots are a part of the southeast quarter of section 26, town. 18 north, range 8 east, which quarter section is a part of the lands selected by the Illinois Central Railroad Company under the act of the legislature of this State chartering that railroad company; and that on December 12, 1856, the company and one John C. Smith entered into a written contract, which is made part of the stipulation, whereby the company, in consideration of the

payments stipulated to be made, agreed to sell to Smith the quarter section for the sum of $25,000, of which $3000 was paid down, and the residue was to be paid in five annual payments, the last one on December 12, 1861, with a provision of forfeiture on failure of making punctual payment. It was agreed that the question to be tried was whether the lots were taxable at the time they were assessed and sold, and for the years the subsequent taxes were paid. The foregoing are all the facts appearing in the case.

Section 22 of the charter of the Illinois Central Railroad Company provides: "The land selected under said act of Congress, and hereby authorized to be conveyed, shall be exempt from all taxation under the laws of this State until sold and conveyed by said corporation or trustees," etc. The quarter section in question is embraced within this provision.

In *Illinois Central R. R. Co.* v. *Goodwin*, 94 Ill. 262, where this company had made a contract of sale of certain of its lands, but the purchasers had failed to pay the purchase money according to the terms of the contract, and the company had declared a forfeiture of the contract, and the company had resumed possession of the lands, we held that, under the provision above, the lands were not subject to taxation. But we there said: "If the purchase money had all been paid, or it had all been due, and the contract had not been declared forfeited, then, it may be, a different question would have been presented."

If the purchase money here had all been paid, we are of opinion the land would be taxable. In such case the whole purpose of the exemption of the land from taxation would have been subserved. The whole beneficial interest in the land would be in the purchaser. The company would have left no substantial right in the land. It would have but the naked legal title, which the purchaser could at once compel it to release. Though not in fact conveyed, the purchaser would be entitled to have the land conveyed. The rule of

equity would well apply, that what ought to be done should
be considered as having been actually done.   To hold to the
letter of the statute, that the land must be *conveyed* before
it is taxable, would enable it, where it has been sold and paid
for, to be held exempt from taxation for all time, by with-
holding a conveyance of it.   This would be a fraud upon the
statute, and not to be permitted.   As respects liability to
taxation, the land, when sold and paid for, is sold and con-
veyed, according to the true intendment of the statute.

Has, then, the purchase money of the land been paid, or,
rather, are we satisfied that it has not been paid?   The last pay-
ment, by the written contract of sale, became due December
12, 1861.   The first tax in question, that for which the lots were
sold, was for the year 1867,—the sixth year after the time of
the last payment.   Had not the purchase money been paid
by that time?   Nothing is heard from the Illinois Central
Railroad Company in connection with the land since the last
payment fell due.   A large payment was made down, $3000,
showing that the purchaser would not be likely to suffer the
land to be forfeited.

The contract was most stringent in the strict requirement
of the payments to be made at the very times they became
due, to save the land from forfeiture.   A town, Tolono, seems
to have been laid out on the land.   All these are indications
toward the purchase money having been paid.

In order to grant this application to refund taxes, the
statute requires that the county board "shall be satisfied of
the facts in the case,"—that is, that the land was not taxable.
We hold that if the purchase money for this quarter section
had been paid, then the lots were taxable.

Is there not enough here to create in the mind a belief
that this purchase money was paid, or, at least, to show
the probability of it?   And might not the county board, in view
of all that appears in the case, say that they were not satis-
fied that this purchase money had not been paid, and there-

fore were not satisfied that the lots were not taxable, and so, under the statute, have well refused the application? We think they might, and that their determination in the matter should not have been reversed.

The judgment of the circuit court will be reversed, and the cause remanded.

*Judgment reversed.*