RICK MOORE *et al.*, Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

Fifth District No. 5—88—0684

Opinion filed August 29, 1990.

856

Thomas L. Kilbride, of Klockau, McCarthy, Ellison & Marquis, P.C., of Rock Island, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, of Chicago, and James L. Morgan, Assistant Attorney General, of Springfield, of counsel), for appellee Pollution Control Board.

Immel, Zelle, Ogren, McClain, Germeraad & Costello, of Springfield (Thomas J. Immel, of counsel), for appellee Daubs Landfill, Inc.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

This is the second appeal in this case, which arises out of the approval, by the Wayne County Board, of site location suitability for a new regional pollution control facility. Earlier, in *Daubs Landfill, Inc. v. Pollution Control Board* (1988), 166 Ill. App. 3d 778, 520 N.E.2d 977 (*Daubs I*), we held that, despite an error in the legal description of the proposed landfill location, notice was sufficient to vest the

county board with jurisdiction where the narrative description of the property was otherwise accurate as stated in the notice of request that was mailed to adjoining landowners and published in the local newspaper. On April 8, 1986, Daubs Landfill, Inc. (hereafter referred to as Daubs), had filed an application for location approval for a regional pollution control facility. Following a hearing the application was approved by the Wayne County Board in findings filed on September 30, 1986. Upon review initiated by a petition filed with the Pollution Control Board (hereafter referred to as PCB) on November 6, 1986, the PCB had determined that the Wayne County Board lacked jurisdiction to proceed because of the descriptive defect in the notice of request for site location approval prepared by Daubs, sent to adjoining landowners, and published in the Wayne County Press. In *Daubs I* we reversed the order of the PCB vacating the siting approval of the Wayne County Board and remanded the cause for consideration of the remaining issues that had been raised for the PCB's review by the appellants, Rick Moore and Leonard Morris.

Upon remand the PCB found that there was no fundamental unfairness in the proceeding before the Wayne County Board and that the county board's decision concerning the statutory criteria of section 39.2(a) of the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)) (hereafter referred to as the Act) was not against the manifest weight of the evidence. In an order adopted June 2, 1988, the PCB affirmed the decision of the Wayne County Board granting site location suitability approval to Daubs.

■ Following the PCB's affirmance, the appellants moved on July 7, 1988, to vacate the order of June 2, 1988. In that motion appellants stated, for the first time, that the applicant, by failing to serve notice of its request for location approval upon the Wayne County Bank and Trust Company, had failed to perfect service of notice upon all property owners within the subject area not solely owned by the applicant and on the owners of all property within 250 feet in each direction of the lot line of the subject property, as required by section 39.2(b) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(b)). Section 39.2(b) states in pertinent part:

> "No later than 14 days prior to a request for location approval the applicant shall cause written notice of such request to be served either in person or by registered mail, return receipt requested, on the owners of all property within the subject area not solely owned by the applicant, and on the owners of all property within 250 feet in each direction of the lot line of the subject property, said owners being such persons or enti-

ties which appear from the authentic tax records of the County in which such facility is to be located ***."

The appellants attached as an exhibit to their motion an unnotarized "Certification of Tax Record Ownership of Property," dated June 24, 1988, and signed by Imogene Brown, supervisor of assessments, Wayne County, Illinois. In the "Certification" is the statement that she had determined that for the entire year of 1986 the owner of two parcels in section 5 of township 2 south, range 7 east, was Wayne County Bank and Trust Company, as shown by the authentic tax records for 1986. The subject site was located in section 5. The appellants asserted that, inasmuch as the affidavit of mailing, dated March 7, 1986, listing property owners who received the prefiling notice, omits the name of Wayne County Bank and Trust Company, the applicant's failure to serve notice on the Wayne County Bank and Trust Company constitutes a jurisdictional defect in the prior proceedings, "divesting" the Wayne County Board and the PCB of jurisdiction. The appellants asked that the PCB's order of June 2, 1988, be vacated on jurisdictional grounds. In the alternative appellants asked the PCB to "remand and reopen this cause for further proceedings on the issue of perfection of service on all property owners and for other appropriate relief."

Upon Daubs' objections to the appellants' motion to vacate, the PCB directed the parties to submit briefs concerning the jurisdictional issue. Thereafter, following the submission of briefs, on October 6, 1988, with one member dissenting, the PCB entered an order in which it found that "this jurisdictional claim cannot be raised at this late date." The PCB distinguished subject matter jurisdiction, which may, it said, be contested at any time, from jurisdiction of the particular case, stating that "jurisdiction of the subject matter does not mean simple jurisdiction of the particular case, but jurisdiction of the class of cases to which that individual case belongs." The PCB concluded that

"the only jurisdictional claim which could be raised for the first time at this point in the proceeding is a claim that the Wayne County Board does not have jurisdiction over petitions for local siting approval. Pursuant to Section 39.2 of the Act the Wayne County Board is the only body which can have jurisdiction over applications for approval of sites within Wayne County which are outside any municipal boundary. Petitioners do not contend otherwise. This Board cannot now consider a claim that certain notice was not given when that claim has never been advanced before. The proper time to raise such a claim is before the

County Board or in a petition to this Board for review of siting approval, not in a motion to vacate filed nearly two years after the County Board's decision."

In his dissent Chairman Dumelle observed that section 39.2(b) of the Act sets forth the notice requirements of a site location suitability application, requirements which have been held to be, he says, "jurisdictional," citing, inter alia, *Browning-Ferris Industries of Illinois, Inc. v. Pollution Control Board* (1987), 162 Ill. App. 3d 801, 516 N.E.2d 804, *Concerned Boone Citizens, Inc. v. M.I.G. Investments, Inc.* (1986), 144 Ill. App. 3d 334, 494 N.E.2d 180, *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.* (1986), 143 Ill. App. 3d 285, 492 N.E.2d 969, and *Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, 487 N.E.2d 743. He would, he said, hold that the action of the Wayne County Board on the application was void *ab initio*:

"Consistent with the strict interpretation of the notice requirements as jurisdictional requirements articulated in the above-cited cases, I believe that if indeed the Wayne County Bank was the owner of parcels of the subject site, as evidence [*sic*] by the authentic tax records of the County, and the Wayne County Bank was not served with notice, then the Wayne County Board was without jurisdiction to hear the application and grant its approval thereon. Likewise, this Board is without jurisdiction to review the Wayne County approval."

The appellants have appealed to this court raising three issues for review: (1) whether the applicant, Daubs, "perfected all jurisdictional pre-filing notice requirements and whether appellants may raise the jurisdictional defect before the Illinois Pollution Control Board"; (2) whether the flood-plain decision is against the manifest weight of the evidence absent flood-proofing plans or a determination of the 100-year flood plain and whether the PCB's affirmance of the flood-plain decision allows an impermissible delegation of statutory authority; and (3) whether the decisions concerning minimal effect on surrounding property values, traffic plan, and operational plans are against the manifest weight of the evidence or otherwise contrary to law.

Concerning the first issue presented, that is, the question pertaining to jurisdiction, the appellants contend that in *Daubs I* we held that "subject matter jurisdictional notice requirements are the statutory requirements specifically identified in the statute." Appellants maintain that the right to assert a jurisdictional issue exists at any time and in any proceeding, directly or collaterally, and that this rule is applicable to administrative proceedings. They conclude that

"[t]he statutory scheme is clear that the perfection of pre-filing notices is a condition precedent. The Wayne County Board's jurisdictional authority is limited by statute, and absent proof of compliance with the statutory notice requirements, the Wayne County Board had no subject matter jurisdiction in this particular siting proceeding."

The appellee PCB argues that it properly denied appellants' jurisdictional challenge as untimely and as having been waived because the jurisdictional challenge here addresses not subject matter jurisdiction but jurisdiction of the case. A challenge to subject matter jurisdiction, it says, may be raised at any time, "even as late in the process as it was in this case," whereas a challenge to jurisdiction of the case is waived unless timely made. The PCB urges that defects of notice affect a county board's jurisdiction of the case, not its jurisdiction of the subject matter of a suit, for the reason that compliance with the notice requirements is necessary only to vest a county board with jurisdiction over a particular application.

The appellee Daubs takes the position that the appellants' newly raised jurisdictional argument is barred by *res judicata*. Daubs argues that the appellants "have not raised a subject matter jurisdiction argument which can be brought up 'at any time' " and have waived the issue. Daubs urges further that not only could the PCB not properly give any consideration to appellants' proffered certification inasmuch as it is outside the record for review but the certification, taken at face value, is not dispositive of any issue.

■■ ■ Once a question of jurisdiction of the subject matter of a suit has been determined on appeal, just as it cannot be attacked collaterally in a later proceeding, it cannot be attacked in a later appeal; the doctrine of *res judicata* is fully applicable and precludes the raising of the issue. (*Sidwell v. Sidwell* (1975), 28 Ill. App. 3d 580, 328 N.E.2d 595.) Similarly, where the question of the personal jurisdiction of the court has been raised and decided, the adjudication of the issue precludes the raising of the question again. (*State Bank v. Reardon* (1939), 301 Ill. App. 248, 22 N.E.2d 716.) Where litigation is prosecuted to an appellate tribunal and questions of law are decided, all questions relating to the same subject matter which were open to consideration and could have been presented are *res judicata*. (*Finley v. Crossley* (1953), 414 Ill. 105, 110 N.E.2d 255.) In general, the principles of *res judicata* apply to questions of jurisdiction as well as to other matters—whether it be jurisdiction of the subject matter or of the parties. (*Sunshine Anthracite Coal Co. v. Adkins* (1940), 310 U.S. 381, 84 L. Ed. 1263, 60 S. Ct. 907; *Treinies v. Sunshine Mining Co.*

(1939), 308 U.S. 66, 84 L. Ed. 85, 60 S. Ct. 44.) In *Richardson v. Ainsa* (1910), 218 U.S. 289, 54 L. Ed. 1044, 31 S. Ct. 23, Mr. Justice Holmes, delivering the opinion of the court, stated that it was not open to the appellant to urge the point of the district court's jurisdiction, the point having already been decided against the appellant in that very case under the name of *Ainsa v. New Mexico & Arizona R.R. Co., No. 2* (1899), 175 U.S. 76, 44 L. Ed. 78, 20 S. Ct. 33; the prior appeal involved the question whether, since the Act of Congress of March 3, 1891, establishing the Court of Private Land Claims, the courts of the Territory of Arizona had jurisdiction, as between private parties, to determine whether a Mexican grant was complete and perfect before the cession by Mexico to the United States.

In *Champaign County v. Reed* (1883), 106 Ill. 389, which was the second appeal in the cause of action, the appellant contended that the circuit court had no power, on appeal, to exercise the functions of the county board as set forth in certain statutory provisions. The purchaser of land at a tax sale had applied to the county board for a refund of taxes he had paid on the ground that the lots had been assessed before they had become taxable. His claim having been disallowed by the county board, he appealed to the circuit court, which entered a judgment in his favor and against the county, which brought the initial appeal in the case, *Champaign County v. Reed* (1881), 100 Ill. 304. In that initial appeal the supreme court reversed the judgment and remanded the cause because it did not sufficiently appear from the record that the purchase money for the property in question had not been paid and that the contract for the sale of the land by the railroad had been forfeited and canceled. In the opinion of the court in the first appeal, the land in question would have been taxable if the purchase money had been paid. Thereafter, in the second appeal of the cause, the supreme court stated that, since "[i]t now appears" that the contract was forfeited and canceled and that no part of the principal of the payments to be deferred under the contract had ever been paid, the land in question was not subject to taxation. (*Reed*, 106 Ill. at 391.) In that second appeal the supreme court concluded that the judgment of the circuit court had been correct. Of the appellant's jurisdictional claim in the second appeal, the court said as follows:

> "The point is made that the circuit court did not have jurisdiction of the matter in controversy by appeal. It is now too late to raise that question. That proposition was before this court in the former appeal, and necessarily determined in remanding the case to the circuit court, and we will not now lis-

ten to it upon the second appeal." 106 Ill. at 392.

In *Finley v. Crossley* (1953), 414 Ill. 105, 110 N.E.2d 255, which was the third appeal in a cause of action, the case originated as a partition suit. From an order denying a motion to vacate a decree of partition and a decree of sale, an appeal to the supreme court by one of the defendants resulted in an affirmance of the order of the trial court. (*Finley v. Crossley* (1951), 409 Ill. 435, 100 N.E.2d 606.) Thereafter, the same defendant filed a bill of review in the trial court challenging the jurisdiction of the court to enter the decree. The bill was dismissed by the trial court. On appeal, in *Lee v. Finley* (1953), 413 Ill. 445, 109 N.E.2d 772, the second appeal in that cause of action, the appellant raised the issue that the original partition decree was void for want of jurisdiction. The contention was founded upon the assertion that the plaintiffs in that proceeding alleged that they were the sole owners of the land and that no other person had any interest therein. The court noted its holding in *Reynolds v. McCurry* (1881), 100 Ill. 356: where it appears in a partition suit that the plaintiff is the sole owner of lands, a court has no jurisdiction of the subject matter of the suit to award partition. The court in *Lee* concluded that the allegations of the complaint in question were sufficient to confer jurisdiction on the trial court and that, the supreme court having determined in an action in which the defendant was a party that he had no interest in the land, he was in no position to raise the question. In the third appeal, *Finley v. Crossley* (1953), 414 Ill. 105, 110 N.E.2d 255, the defendant appealed from the decree of the trial court approving the master's report of sale. One of the issues presented for review was the lack of jurisdiction, which, like the other issue presented, the court said, had been decided adversely to the appellant in the second appeal. Relying upon the rule, set forth above, that, where litigation is prosecuted to an appellate tribunal and questions of law are decided, all questions relating to the same subject matter that were open to consideration and could have been presented are *res judicata,* the court held that its judgments in the earlier appeals were *res judicata* and affirmed the decree of the trial court.

In *Sidwell v. Sidwell* (1975), 28 Ill. App. 3d 580, 328 N.E.2d 595, the husband had earlier secured an *ex parte* divorce in Arkansas. Thereafter the wife filed suit in Illinois seeking, *inter alia,* to settle property disputes, rights to alimony, and attorney fees. Upon appeal in *Sidwell v. Sidwell* (1971), 132 Ill. App. 2d 1055, 271 N.E.2d 115, which was the second appeal in the case, the court held that she was entitled to have her rights arising out of the dissolution of the marriage adjudicated, stating:

"The wife, in her proposed amended complaint, alleges that the husband secured an Arkansas divorce. As the pleadings now stand, the parties are committed to the validity of the Arkansas divorce. Upon the authority of *Schwarz* [*Schwarz v. Schwarz* (1963), 27 Ill. 2d 140, 188 N.E.2d 673] the wife may bring an action for the determination of equities in property and of alimony and attorneys fees where the marital status has been determined by a valid *ex parte* foreign decree, but such latter court was without personal jurisdiction to determine equities in property or alimony.

*** The order of the trial court in denying the wife leave to file an amended complaint seeking a division of the property, alimony and attorney fees is reversed and this cause is remanded with direction that the motion to file such amended complaint be granted." (*Sidwell*, 132 Ill. App. 2d at 1058, 271 N.E.2d at 118.)

Thereafter the wife filed an amended complaint. Following judgment by the trial court, the husband appealed, raising, among other issues, the question whether the Arkansas court, which had granted the divorce, had jurisdiction over the property claims, thereby excluding Illinois courts' jurisdiction. The husband contended that the wife's complaint should nonetheless have been dismissed because the Arkansas divorce was not, in fact, *ex parte*, for the reason that the wife had made, not a special, but a general, appearance in Arkansas, thereby giving the Arkansas court personal jurisdiction and precluding the wife from seeking the relief she had sought in Illinois courts. The reviewing court reasoned:

"In the second *Sidwell* appeal, the question directly presented to this court was whether the trial court could adjudicate the rights which arose upon dissolution of the marriage. In that appeal, defendant contended the trial court did not have jurisdiction, although he did not rely on the exact grounds presented here. Defendant could have raised the issue he presents at any time since the 1967 divorce. He did not choose to do so until one appeal and numerous court appearances later.

The issue of the trial court's jurisdiction has already been finally adjudicated. It cannot again be raised by defendant at this late date.

'A court's jurisdiction having been once attacked, the former adjudication precludes the raising of the question again. (*Chicago Title and Trust Co. v. National Storage Co.*, 260 Ill. 485, 103 N.E.2d 227.) The doctrine of *res adjudicata* and estoppel

applies not only to all matters that were litigated, but to all others that might have been presented in that proceeding. Cases will not be entertained and tried piece-meal.' *Chamblin v. Chamblin*, 362 Ill. 588, 592, 1 N.E.2d 73, 74-75." 28 Ill. App. 3d at 583, 328 N.E.2d at 598.

In the instant appeal the appellants contend, as they did in *Daubs I*, that notice was defective. There we held that the notice given was sufficient to vest the Wayne County Board with jurisdiction. Whether the jurisdiction in question is, as the appellants here assert, subject matter jurisdiction, it is plainly the same kind of jurisdiction challenged in the earlier appeal, relating as it does to the requirements of notice set forth in section 39.2(b) of the Act. We need not and do not decide whether such notice requirements have a bearing upon subject matter jurisdiction. The common law of Illinois establishes that, where the question of jurisdiction, whether it be jurisdiction of the subject matter or of the parties, has been raised and decided, the adjudication of the issue precludes the raising of the question again. This question of law was decided in *Daubs I*, and all questions relating to it that were open to consideration and could have been presented, such as the instant one based on information plainly available in the tax records for 1986, are *res judicata*. Thus, the issue was not properly before the PCB for consideration upon remand and will not be considered in this second appeal to this court.

With respect to the second issue appellants present, that pertaining to the flood-plain decision, they maintain that the record contains no flood-proofing plan and no evidence that the site is outside the 100-year flood plain, thereby rendering the flood-plain decision against the manifest weight of the evidence. The PCB and Daubs both assert that the decision was not against the manifest weight of the evidence.

The proper standard of review for the decision of the county board is whether the decision is against the manifest weight of the evidence. (*Tate v. Pollution Control Board* (1989), 188 Ill. App. 3d 994, 544 N.E.2d 1176.) A decision is against the manifest weight of the evidence if the opposite result is clearly evident, plain, or indisputable from a review of the evidence. (*Tate*, 188 Ill. App. 3d 994, 544 N.E.2d 1176.) The province of the hearing body is to weigh the evidence, resolve conflicts in testimony, and assess the credibility of the witnesses; a reviewing court is not in a position to reweigh the evidence but can merely determine if the decision is against the manifest weight of the evidence. (*Tate*, 188 Ill. App. 3d 994, 544 N.E.2d 1176.) The manifest weight standard of review also covers appellate court review of decisions by the PCB. *Waste Management of Illinois, Inc. v.*

*Pollution Control Board* (1984), 122 Ill. App. 3d 639, 461 N.E.2d 542.

■ At the time the application for approval in this case was filed in 1986, section 39.2(a)(iv) (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(iv)) of the Act provided that the county board shall approve the site location suitability for a new regional pollution control facility only if, among the seven criteria listed in subsections 39.2(a)(i) through (vii) (Ill. Rev. Stat. 1985, ch. 111½, pars. 1039.2(a)(i) through (a)(vii)):

> "the facility is located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation, or the site is flood-proofed to meet the standards and requirements of the Illinois Department of Transportation and is approved by that Department."

Thereafter section 39.2(a)(iv) was amended by Public Act 85–654 to provide, effective September 20, 1987, that the county board shall approve the site location suitability of such a facility only if "the facility is located outside the boundary of the 100 year flood plain or the site is flood-proofed." Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(a)(iv).

Included in the record as exhibit No. 127 is a letter dated May 28, 1986, from the Illinois Department of Transportation to counsel for the applicant. The letter states in relevant part:

> "Inasmuch as the site is located in a rural area and on a stream with a drainage area of less than ten square miles, an Illinois Department of Transportation, Division of Water Resources permit will not be required for the landfill.
>
> With regard to Section 39.2 of the Illinois Environmental Protection Act, this letter constitutes Illinois Department of Transportation approval upon your receipt of all appropriate Illinois Environmental Protection Agency approvals."

The appellants assert that this letter contains no affirmative statement that the Illinois Department of Transportation determined that the site is outside of the 100-year flood plain or that the site is flood proofed to meet any of the department's standards and requirements.

■ In its order of June 2, 1988, the PCB noted as follows:

> "At the time of the instant request for site approval, the fourth criterion established by Section 39.2 was whether the facility is located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation (IDOT) or the site is floodproofed to meet the standards and requirements of IDOT and approved by it. Petitioners allege that the proposed facility does not meet this criterion because IDOT has not found that the facility is outside the 100 year flood

plain and Daubs did not submit any flood-proofing plans to IDOT. Petitioners submit that under the statute, only IDOT can make these determinations, and maintain that no finding was made on either issue."

With regard to the appellants' contentions, the Board reasoned as follows:

"The statutory mandate of reliance on IDOT determinations to satisfy criterion four has been a difficult issue, and the legislature recently amended Section 39.2 so as to remove IDOT from the statutory language. (P.A. 85—654, effective September 20, 1987.) However, the statute as it existed at the relevant time gave IDOT the sole power to make determinations on the flood plain issue. This Board has previously held that criterion four has been solely delegated by the legislature to IDOT, and that a county board is required to accept IDOT's determination. *Board of Trustees of Casner Township v. County of Jefferson,* 63 PCB 297 (PCB 84—175; April 4, 1985); see also *Concerned Neighbors for a Better Environment v. County of Rock Island,* 67 PCB 427 (PCB 85—124; January 9, 1986). The letter sent to Daubs' attorney is the same type which IDOT has repeatedly issued in landfill siting cases, and does indeed constitute IDOT's findings on the statutory issues. The Wayne County Board was required to accept IDOT's determination; thus, it cannot be said that the County Board's decision on criterion four was against the manifest weight of the evidence."

We agree with the reasoning expressed by the PCB and consider the decision of the Wayne County Board under these circumstances not to have been against the manifest weight of the evidence as to this criterion.

■ The appellants assert further with regard to this issue concerning the flood-plain criterion that the PCB's "affirmance" of the "letter" from the Illinois Department of Transportation allows an impermissible delegation of statutory authority in that the Illinois Department of Transportation deferred its approval of the flood-plain criterion to the Illinois Environmental Protection Agency. In light of the reasoning of the PCB expressed above in its order of June 2, 1988, we consider this contention by the appellants to be unmeritorious.

With respect to the final issue presented for our review, the appellants urge that the decision of the Wayne County Board and the PCB's affirmance thereof with regard to criteria three, five, and six of section 39.2(a) are against the manifest weight of the evidence.

■■■ ■ Section 39.2(a)(iii) of the Act provides that the county board shall approve the site location suitability for a new regional pollution control facility only if "the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property." (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(iii).) Appellants state that Galen Wells, the real estate appraiser who testified for the applicant concerning the character and value of real estate in the area, failed to assess the actual values of the surrounding properties and merely concluded that the impact of the proposed facility would be negligible; if this witness did not assess the existing value of surrounding property, they argue, "there can be no conclusion on the 'effect' on the value of the surrounding property." Although appellants take the position that the applicant did not comply with the "threshold test of determining the 'value' of the surrounding property," they cite no authority in support of their position and advance no persuasive argument for such a requirement. In its opinion the PCB made the following observations:

"[I]t is apparent that Mr. Wells did testify that he believed that the proposed facility would not have an adverse impact on property values in the area (R. at 11), and that any impact the facility might have on property values would be negligible (R. at 14). Mr. Wells' conclusions were based on a review of the plans for the facility, his understanding of the proposed operation of the facility, and visits to an existing landfill and a closed landfill in Wayne County. (R. at 14-17.) Mr. Wells stated that a number of newer homes had been built close to those sites, and that this fact led him to believe that those landfills had not had much effect on property values. (R. at 9-11.) On the other hand, the Board has been unable to locate any evidence or testimony presented by petitioners which would even rebut Mr. Well's [sic] testimony. The Board cannot find that the County Board's decision on criterion three was against the manifest weight of the evidence. Simply put, there was no evidence against Daubs' position for the County Board to even consider."

Our review of the entire record, including the testimony of Mr. Wells, reveals that the PCB has accurately and fairly described the evidence concerning this criterion. In light of this evidence, it was not against the manifest weight of the evidence for the PCB to affirm the Wayne County Board's approval of site location suitability with respect to this criterion.

■■■ The fifth criterion set forth in section 39.2(a) of the Act is that "the plan of operations for the facility is designed to minimize

the danger to the surrounding area from fire, spills, or other operational accidents." (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(v).) The appellants contend that there is no evidence in this proceeding of any operational plan or evidence of any reasonable efforts to minimize danger from fire, spills, or other operational accidents. In its opinion the PCB stated as follows with regard to the evidence adduced at the hearing before the county board concerning criterion five:

"Daubs presented testimony from Mr. [Michael] Rapps [a professional engineer] on this criterion. Mr. Rapps stated that the facility would guard against fire by covering the trash with the required daily cover and by refusing to accept any 'hot' loads, and further noted that city water is available along the road to the east of the facility. Mr. Rapps stated that he was recommending that Daubs confer with the local fire protection district and install a fire hydrant where recommended. (R. at 110.) As to spills, Mr. Rapps testified that because the facility will not accept liquid waste, there would be no danger of spills. (R. at 110-111.) Mr. Rapps then specifically stated that he believed that the plan of operation will minimize the danger to the surrounding area from fire, spills and other operational accidents. (R. at 111-112.) Petitioners did not present any testimony to rebut Mr. Rapps' testimony; indeed their challenge on criterion five is based upon an alleged lack of 'meaningful detail' in the plan of operations and not upon any claim that Mr. Rapps' testimony was unbelievable or flawed. Based upon a review of the record, the Board finds that the Wayne County Board could reasonably have accepted Mr. Rapps' testimony and found that criterion five was satisfied."

Once again, our review of the record shows that the PCB has correctly described the evidence pertaining to this criterion. In view of the evidence contained in the record, affirmance by the PCB of the Wayne County Board's approval of site location suitability with respect to this criterion may not be said to be against the manifest weight of the evidence.

■■ ■ The sixth criterion set forth in section 39.2(a) of the Act is that "the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows." (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(vi).) Appellants maintain that there is no traffic plan and that Daubs and the PCB have simply misapplied the criterion pertaining to traffic patterns. In its opinion the PCB observed with respect to the evidence adduced concerning criterion six:

"Rex Daubs [the applicant] testified as to the traffic in the

area. He stated that there are two roads leading to the site: one from Route 45 and one from Route 15. The access road to the landfill itself will be off the north-south road that connects with route 15. (R. at 186, 188.) Mr. Daubs testified that these roads are traveled by oil field equipment, tank trucks, farm machinery, and personal trucks and cars. (R. at 187.) Mr. Daubs further testified that he felt that the two roads to the site are adequate to minimize the impact on existing traffic flows; that the north-south road off which the access road to the landfill will be built is not heavily traveled; and that a truck pulling out or off of that north-south road would not cause any hazard to other traffic. (R. at 187-188.) Petitioners presented testimony from the township road commissioner, who stated that the north-south road has an oil surface, has a five ton weight limit from January through April, and that trucks over that weight would tear up the road. (R. at 257-260.)

It is true that the evidence presented by Daubs on this criterion is a bit sketchy. However, given the manifest weight standard of review, the Board cannot say that the County Board could not have reasonably decided that criteria six had been satisfied. The record contains evidence on both sides of the issue, and the County Board apparently chose to give Mr. Daubs' testimony greater weight."

Having examined all of the evidence pertaining to criterion six upon review, which is accurately reflected in the opinion of the PCB, we cannot say that the PCB erred in its assessment of this evidence and that its affirmance was against the manifest weight of the evidence.

Affirmed.

RARICK and CHAPMAN, JJ., concur.