NOTICE

Decision filed 04/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220123-U

NO. 5-22-0123

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* CAROLYN WHITAKER, | ) ) ) | Appeal from the Circuit Court of Alexander County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 12-F-84 |
| MICHAEL OLIVER JR., | ) ) ) | Honorable Tyler R. Edmonds, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court correctly dismissed the respondent's pleading challenging the court's personal jurisdiction over him in a proceeding 10 years earlier due to allegedly defective service of process where (1) the doctrine of *res judicata* barred his claim; and (2) the court obtained personal jurisdiction over the respondent because process was properly served at an address where it was reasonably likely to give him actual notice of the proceedings under all relevant circumstances.

¶ 2    The trial court entered a default judgment ordering the respondent, Michael Oliver Jr., to pay child support to Carolyn Whitaker for their two children. The summons in that matter was served by substitute service on the respondent's mother. Nearly eight years later, the respondent filed pleadings in the trial court, asserting that the service of process was defective and that the court therefore lacked personal jurisdiction over him when it entered the default judgment. The court denied his motions. The respondent appeals, arguing that his mother's apartment was not his

1

usual place of abode and that, as such, service was defective and did not confer jurisdiction on the court. We affirm.

¶ 3                                              I. BACKGROUND

¶ 4    On September 22, 2012, the respondent signed a voluntary acknowledgement of paternity, acknowledging that he is the father of the two children at issue in this case. The address provided by the respondent on the form was an apartment on Martin Luther King Avenue in Cairo, Illinois.

¶ 5    On October 25, 2012, the petitioner, the Illinois Department of Healthcare and Family Services (Department), filed a complaint for child support against the respondent on behalf of Whitaker. On the same date, the Illinois Attorney General, on behalf of the Department, sent an address information card to the postmaster in Cairo requesting any updated information on the respondent's address. The card, returned the following day, indicated that the respondent still received mail at the Martin Luther King Avenue address.

¶ 6    On November 12, 2012, an Alexander County deputy sheriff served a summons by substitute service on the respondent's mother, Karen Young, at the Martin Luther King Avenue address listed on the acknowledgment of paternity form and confirmed by the Cairo postmaster. The return of service found in the record is signed by Deputy Tatum and indicates that he served the summons on a black female identified as the respondent's mother, Karen Young, at that address at 12:54 p.m. on November 12, 2012.

¶ 7    On November 28, 2012, the court held a hearing in the matter. The respondent did not appear. The court entered a default judgment ordering the respondent to pay Whitaker $150 per month in child support.

¶ 8    On September 12, 2017, the respondent filed a *pro se* pleading with the court titled "Motion for Status and Production of Documents." He alleged that in April 2017, while incarcerated, he

2

received correspondence from the Department, including a petition to modify child support. He further alleged that he was never served or summoned in the child support case and that he was unaware of the existence of the case before receiving the correspondence from the Department earlier that year. The respondent requested that the court "produce ALL documents from the commencement of this case until the current date along with a photocopy of the record sheet." (Emphasis in original.) A September 21, 2017, docket entry indicates that a copy of the court record was mailed to the respondent on that date.

¶ 9    On August 31, 2020, the respondent filed a *pro se* motion styled as a "Motion to Dismiss Case." He alleged that he was never properly served with the 2012 complaint for child support and requested the immediate dismissal of the case.

¶ 10    On October 2, 2020, the Department filed its response to the respondent's motion. The Department argued that the return of service signed by Deputy Tatum constituted *prima facie* proof of proper service that could be overcome only by clear and convincing evidence, and that the respondent had not provided such evidence. The Department further argued that the respondent's challenge was barred by the doctrine of *laches*. In support of this argument, the Department pointed out that the respondent did not challenge the alleged defects in service for more than seven years after entry of the order. The Department also noted that the respondent indisputably had actual notice of the default judgment at least as early as April of 2017, but he waited more than three years to file his motion after that time.

¶ 11    On October 16, 2020, the respondent filed an affidavit in support of his motion to dismiss the case. He acknowledged that at some point, he received mail at his mother's apartment in Cairo, but he alleged that he never resided at that address. He further alleged that on November 12, 2012, when the summons was served, he was residing in Killeen, Texas, having recently moved there.

He stated that he was "100% sure that [he] was incarcerated" in Texas, both on the date of service and on the date the default judgment was entered (November 28, 2012). The petitioner alleged that he was never served in the child support case and that once he became aware of the proceedings, he "immediately began in inquiry to the court and began [his] own investigation and the study of the law since [he could not] afford an attorney in this matter." He requested the dismissal of the case.

¶ 12 Attached to the motion was a copy of a sentencing order from Bell County, Texas. The order was dated May 15, 2013. In the order, the Bell County court sentenced the respondent to 270 days in jail with credit for 113 days spent in custody on the charge prior to that date. As the Department notes in its brief in this appeal, these numbers indicate that the respondent was not in custody on that particular charge in November of 2012.

¶ 13 The court held a hearing on the respondent's motion on May 19, 2021. The record indicates that the respondent, who was incarcerated at the time, had notice of the hearing. However, he did not appear, either in person or by telephone. The same day, the court made a docket entry denying the respondent's motion to dismiss and terminating his support obligation "excluding any amounts owed to the State."

¶ 14 On June 2, 2021, the court entered a written order in the matter. The court found that the respondent owed an arrearage of $2700 to the Department but noted that Whitaker had waived any arrearage the respondent owed to her. The court further found that the respondent's incarceration constituted a substantial change in circumstances that justified a modification in child support. The court therefore reduced the respondent's child support obligation to zero dollars, effective September 1, 2021. Finally, the court expressly stated that the respondent's objection to service was denied.

4

¶ 15    On June 8, 2021, the respondent filed two *pro se* motions. The first was titled "Motion for Status." In it, the respondent asserted that (1) he was not "summoned to court" for the scheduled hearing on May 19 because no writ had been issued and (2) he had not received notice of any further court dates. He requested that he be informed concerning "what is going on." The second pleading was titled "Motion to Supplement Record with Hypothetical Analysis." In it, the respondent argued that, assuming proper service, the amount of child support ordered in 2012 was excessive in view of his circumstances under the version of the applicable statute in effect in 2021. He asserted, conclusorily, that the child support order was therefore unconstitutional. We note that, as the Department points out, child support was calculated based upon the version of the statute in effect in 2012.

¶ 16    On November 22, 2021, the respondent filed a *pro se* pleading labeled as a counterclaim. We note that the docket contains no entries between June and November of 2021. It is thus unclear when the respondent received notice of the court's order rejecting his challenge to the service of the summons and modifying his child support obligations.

¶ 17    In the counterclaim, the respondent alleged that service of the original summons was ineffective and that the default judgment against him violated his rights to due process and equal protection. He further alleged that the proceedings were rendered "totally ineffective" pursuant to principles of due process and equal protection because "judicial officers" failed to (1) "summon" the respondent to the May 19, 2021, hearing, (2) "conclude the proceedings with an appropriate ruling," and (3) "respond to [his] motion for status." As relief, the respondent requested that any payments received by the Department be refunded.

¶ 18    On January 6, 2022, the Department filed a motion to dismiss the petitioner's counterclaim. The Department argued that if the petitioner's pleading was construed as a response to the initial

5

complaint for child support, filed on October 25, 2012, it should be dismissed under section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2018)) because it was not timely filed. The Department further argued that if construed as an attack on the default judgment entered in November 2012, the respondent's pleading should be dismissed because (1) it was not brought pursuant to section 2-1401 (*id.* § 2-1401) and (2) the claims raised were barred by *res judicata* (see *id.* § 2-619(a)(4)). Finally, the Department argued that if construed as an attack on the June 2, 2021, order, the pleading should be dismissed because (1) it was not brought under section 2-1401 (*id.* § 2-1401) and (2) the respondent had sufficient notice of the hearing to allow him to either arrange for transportation to court or to participate in the hearing by telephone.

¶ 19    On February 2, 2022, after a hearing in the matter, the court made a docket entry granting the Department's motion to dismiss. On February 9, the court entered a written order dismissing the respondent's counterclaim. This timely appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    The respondent's primary argument in this appeal is that the trial court lacked personal jurisdiction to enter the initial child support order because the service of process was defective. In response, the Department contends that both the "motion to dismiss the case" and the "counterclaim" were, in substance, petitions for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (*id.*) because the respondent filed both pleadings more than 30 days after the entry of the child support order and, in both pleadings, he challenged the court's jurisdiction to enter that order. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101-02 (2002); *Department of Healthcare & Family Services ex rel. Sanders v. Edwards*, 2022 IL App (1st) 210409, ¶ 43. The Department contends that the court properly denied the respondent's jurisdictional claim because (1) the claim was barred by *res judicata* because it was raised and

6

litigated during the proceedings on the respondent's earlier "motion to dismiss the case," which the respondent did not appeal, and (2) the court properly found that service was proper and that the court therefore had personal jurisdiction over the respondent in the 2012 child support proceedings.

¶ 22    In his reply brief, the respondent acknowledges that had he labeled his counterclaim as a 2-1401 petition, the substance of the claim would have been "exactly the same." He argues, however, that the pleading must be liberally construed. See *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, ¶ 21. He argues that we should not find his claims to be barred by *res judicata* "simply because [he] did not choose to abandon the jurisdictional issue after the Motion to Dismiss." To the extent the respondent suggests that liberally interpreting his pleading requires this court to treat it as a true counterclaim, rather than a section 2-1401 petition, this argument does not help him. If treated as a true counterclaim, his pleading was filed long after the trial court lost jurisdiction to consider it. See *Won v. Grant Park 2, L.L.C.*, 2013 IL App (1st) 122523, ¶ 20 (explaining that trial courts lose jurisdiction 30 days after entry of a final judgment if no timely posttrial motion directed against the verdict has been filed). In any case, we agree with both of the Department's contentions.

¶ 23    The doctrine of *res judicata* applies where a court of competent jurisdiction has rendered a final decision on the merits of a cause of action. Under the doctrine, the judgment bars any subsequent litigation of the same cause of action between the same parties or their privies. *Severino v. Freedom Woods, Inc.*, 407 Ill. App. 3d 238, 244 (2010). *Res judicata* applies if the following three elements are satisfied: (1) a court of competent jurisdiction has rendered a final judgment on the merits, (2) the cause of action in each case is identical, and (3) the parties or their privies are likewise identical. *Id.*

¶ 24    In this case, each of the three elements is satisfied. First, there is no dispute that in June 2021, a court of competent jurisdiction rendered a final judgment rejecting the respondent's claim that defective service of process rendered the court's November 2012 child support order void for lack of jurisdiction. There is likewise no dispute that the respondent's November 2021 "counterclaim" raised precisely the same issue. In addition, both actions involved the same parties. Thus, the respondent's claim is barred by *res judicata*. See *Moore v. Illinois Pollution Control Board*, 203 Ill. App. 3d 855, 861 (1990) (noting that once the question of personal jurisdiction "has been raised and decided, the adjudication of the issue precludes the raising of the question again").

¶ 25    In support of his contention to the contrary, the respondent cites *Keith v. B&B Builders Supply, Inc.*, 101 Ill. App. 3d 1123 (1981). There, a homeowner filed an action against a builder, alleging breaches of warranties for habitability and suitability for a particular purpose. In a prior action, the builder had obtained a default judgment against the homeowner for money due under the construction contract. *Id.* at 1124. Generally, *res judicata* bars "not only what was actually decided in the first action, but also whatever could have been decided." *Severino*, 407 Ill. App. 3d at 244; see also *Keith*, 101 Ill. App. 3d at 1125. The builder thus argued that the homeowner's subsequent action was barred by *res judicata* because the two actions involved the same parties, and his claim could have been raised as a counterclaim in the builder's prior suit.  However, as the *Keith* court explained, a party is not required to raise a claim that is wholly separate and distinct from a case pending against him as a counterclaim even though he may do so. *Keith*, 101 Ill. App. 3d at 1125. Unlike *Keith*, this case does not involve a separate and distinct claim that could have been raised earlier as a counterclaim. Rather, the case involves an identical claim that was

8

previously raised and decided. *Keith* is inapposite to the question before us. We conclude that the respondent's claim was barred by *res judicata*.

¶ 26    Moreover, we agree with the Department and the trial court that the original service was sufficient to establish personal jurisdiction over the respondent in the 2012 proceedings on the petition for child support. As the respondent correctly points out, a judgment entered by a court lacking subject matter jurisdiction or personal jurisdiction over the parties is void and may be challenged at any time. *Sarkissian*, 201 Ill. 2d at 103. A trial court obtains personal jurisdiction over a respondent either through service of process in accordance with the applicable statute or through the entry of an appearance by the respondent. *Mayfield v. Smith*, 2019 IL App (1st) 181899, ¶ 26. We review *de novo* the question of whether the trial court obtained personal jurisdiction over the respondent. *Id.* However, we review the court's factual findings to determine whether they are against the manifest weight of the evidence. *Sanders*, 2022 IL App (1st) 210409, ¶ 44.

¶ 27    Section 2-203 of the Code of Civil Procedure (735 ILCS 5/2-203 (West 2018)) governs the service of process on individuals. *Mayfield*, 2019 IL App (1st) 181899, ¶ 27. In pertinent part, that statute provides that service of the summons must be made by leaving a copy with the defendant personally or by "leaving a copy at the defendant's usual place of abode" with a person who resides there and is at least 13 years old. 735 ILCS 5/2-203(a)(1), (a)(2) (West 2018). If process is served by "substitute service" on an individual residing with the defendant, the process server must inform that individual "of the contents of the summons" and must also mail a copy to the defendant at his usual abode "in a sealed envelope with postage fully prepaid." *Id.* § 2-203(a)(2). In the process server's certificate (or in a record maintained by the sheriff's office or the private process server's

9

employer), the process server must identify the gender, race, and approximate age of the person served and must state the location, date, and time of service. *Id.* § 2-203(b).

¶ 28   Where, as here, the method of service is substitute service, the process server's certificate is required to demonstrate strict compliance with each requirement of the statute. *Mayfield*, 2019 IL App (1st) 181899, ¶ 28 (citing *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 309 (1986)). However, failure to file a proper proof of service does not itself render otherwise proper service invalid. *Id.* ¶ 31 (quoting Ill. S. Ct. R. 102(d) (eff. Jan. 1, 2018) and *Thill*, 113 Ill. 2d at 312). The process server's certificate constitutes evidence that he or she served the summons in accordance with the statute, but the certificate requirement " 'is a matter of convenience' " rather than a prerequisite to proper service. *Id.* (quoting *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469, 480-81 (1981)).

¶ 29   In determining whether substitute service was proper, we must consider the record as a whole. *Sanders*, 2022 IL App (1st) 210409, ¶ 48. The process server's certificate constitutes *prima facie* evidence of proper service that cannot be overcome absent clear and satisfactory evidence. The uncorroborated affidavit of the defendant or the person served is not adequate. *Id.* This rule, however, applies only to matters within the process server's knowledge—such as the fact that he served the summons, where he served it, and who accepted service. *Id.* With respect to matters outside the process server's knowledge—such as the defendant's usual place of abode— the uncorroborated affidavit is sufficient to counter the certificate, thus requiring the plaintiff to introduce evidence to rebut the defendant's affidavit. *Id.* ¶ 49.

¶ 30   Here, the respondent challenges the service solely on the basis that he contends his mother's apartment was not his usual place of abode. This question turns on the legal definition of a "usual place of abode." There is no "hard and fast" definition of that term under Illinois law.

Instead, whether a specific location constitutes a person's usual place of abode depends on the facts and circumstances of the particular case. *Id.* ¶ 71; *United Bank of Loves Park v. Dohm*, 115 Ill. App. 3d 286, 289 (1983). The primary consideration is whether service at a specific location is reasonably likely to provide actual notice of the proceedings. *Sanders*, 2022 IL App (1st) 210409, ¶¶ 47, 71. Because this is a question of fact, we defer to the trial court's finding unless it is against the manifest weight of the evidence. *Id.* ¶ 71.

¶ 31   In *Sanders*, the First District considered the question of whether a particular address was a respondent's usual place of abode under facts and circumstances similar to those before us in the instant case. There, as in this case, the sheriff's department certified substitute service on the respondent's mother. *Id.* ¶ 4. The respondent did not appear, and the court entered a default judgment against him ordering him to pay child support. *Id.* ¶ 5. Sixteen years later, he filed a motion to quash service and set aside that order, arguing that service was defective because the address where the summons was served was not his usual place of abode. *Id.* ¶ 6.

¶ 32   In support of his motion, the respondent provided documents showing that he was incarcerated in the Cook County jail for approximately two months, including the date on which the summons was served. *Id.* ¶ 7. In addition, he provided an affidavit from his mother, who stated that the respondent had never lived with her at the address listed in the certificate of service and that she did not know his whereabouts at the time of service. *Id.* ¶ 8. Additional evidence, including documents and testimony at an eventual evidentiary hearing, showed that the respondent lived a transient lifestyle during the time period at issue (*id.* ¶ 22), that he was in and out of jail during this period (*id.* ¶ 36), and that his mother's address appeared as his residence on jail records and employment records (*id.* ¶ 10). The respondent acknowledged in his hearing testimony that he used

11

his mother's house as a mailing address because she was the most reliable person to receive mail on his behalf. *Id.* ¶ 28.

¶ 33    The trial court in *Sanders* expressly found, based upon this evidence, that the respondent's mother's house was the most reasonable place for service of process because it was the place where service was most likely to provide him with actual notice of the proceedings. *Id.* ¶ 36. The trial court concluded, however, that because the process server did not testify at the hearing, the documentary evidence and the respondent's admission that his mother's house was the most reliable place for him to receive mail were not enough to rebut the respondent's affidavit stating that his mother's house was not his usual place of abode. *Id.* ¶ 37.

¶ 34    On appeal, the First District reversed the trial court's decision to quash service (*id.* ¶ 78), but upheld the trial court's factual finding that the respondent's mother's house was the place where service was most likely to provide actual notice of the proceedings (*id.* ¶¶ 62, 67, 76-78). Because there is no precise legal definition of a "usual place of abode" and because the reasonable likelihood that service in a particular location will provide actual notice is the most important consideration (*id.* ¶ 71), the appellate court found that the respondent's mother's home qualified as his usual place of abode for purposes of substitute service (see *id.* ¶¶ 62, 67, 71-73, 76).

¶ 35    The record in *Sanders* was more developed than the record in this case, and unlike this case, the trial court's decision involved credibility determinations concerning the live testimony of the respondent and his witnesses. See *id.* ¶ 67. Nevertheless, the factual similarities are salient. Here, as in *Sanders*, the respondent has acknowledged receiving mail at his mother's address, and the Department's documentary evidence establishes that he chose to provide that address to the Department when he filled out and signed a voluntary acknowledgement of paternity. The facts alleged in the affidavit the respondent filed in support of his motion to dismiss also demonstrate

12

that he, like the respondent in *Sanders*, led a transitory lifestyle at the time of service. He averred that he had "just recently moved to Killeen, Texas," when the summons was served and that he returned to Illinois after being released from the Bell County jail. In light of these facts, service at that address was reasonably calculated to give him actual notice of the proceedings, and that address was the place where service was most likely to provide that notice. Thus, it was his usual place of abode.

¶ 36     In support of his argument to the contrary, the respondent asserts that his mother's apartment was "by definition" not his usual place of abode. As authority for this proposition, he cites *Sells v. Berry*, 24 Fed. Appx. 568 (7th Cir. 2001), an unpublished decision of the Seventh Circuit Court of Appeals. The issue in *Sells*, however, was not whether a particular location was the defendant's usual place of abode. Rather, the question was whether substitute service on the defendant's neighbor satisfied the requirements of the applicable Indiana procedural rule. *Id.* at 571. Thus, we find *Sells* inapposite to the question at hand.

¶ 37     The respondent also asserts that service of process at his mother's apartment was not reasonably calculated to provide actual notice, citing *Najas Cortes v. Orion Securities*, *Inc.*, 362 Ill. App. 3d 1043 (2005). The question involved in that case was whether mailing the summons to a multinational corporation's representative in Chile was reasonably calculated to provide the corporation with actual notice of an action against it even though that office had closed two years earlier and the plaintiff regularly corresponded with the corporation's offices in Canada. *Id.* at 1050-51. The respondent does not explain why he believes this case is remotely analogous to *Najas Cortes*, and we find no support for his position in that case. For the reasons we have discussed, we conclude that the court correctly determined that service at the respondent's mother's apartment was proper, thus giving the trial court personal jurisdiction over the respondent to adjudicate the

13

Department's original complaint for child support. Moreover, as we have also discussed, the court's resolution of this question in proceedings on the respondent's motion to dismiss the case precluded the respondent from raising the same issue in his counterclaim.

¶ 38    The respondent raises three additional arguments, none of which merit much discussion. He contends that, even assuming proper service and jurisdiction, the child support order was unconstitutional because it would have been excessive under the version of the applicable statute now in effect. As noted previously, the 2012 order calculated child support in accordance with the version of the statute then in effect. Further, even assuming the support calculations were incorrect, the respondent provides no explanation or supporting authority for the proposition that the error would have rendered the judgment unconstitutional. Moreover, he did not timely challenge the asserted error within 30 days of its entry.

¶ 39    The respondent further argues that various acts and omissions of the judiciary rendered the court's judgments "totally ineffective pursuant to due process and equal protection." In particular, he notes that he was not present at the May 19, 2021, hearing even though he filed a petition for a writ of *habeas corpus*. Although he acknowledges that the petition does not appear in the record, he asserts that "the reason has to be contributed to foul play." Finally, the respondent asserts without explanation that "the proceedings, before, during, and after, were totally arbitrary," and that the court's order dismissing his counterclaim was erroneous and arbitrary, "reflecting the previous denials of justice." The respondent has not provided any argument in support of these conclusory assertions, and we find them to be wholly without merit.

¶ 40                                    III. CONCLUSION

¶ 41    For these reasons, we affirm the trial court's judgment.

¶ 42    Affirmed.

14